## H. O. Wilbur & Sons, Inc., v. Lamborn & Co.

*Sales — Performance by vendor — Right to designate steamers to make delivery and to substitue one steamer for another.*

Under a contract for the sale of sugars to be shipped from Java to Philadelphia within a specified period, by steamers to be declared by the vendor from time to time, which is silent as to his right to substitute one steamer for another, the vendor is not precluded from substituting one steamer for another for good cause by a declaration that the vendee's cargo had been shipped by a particular steamer, where the substituted vessel sailed from Java within the time specified.

Charge to the jury. C. P. No. 1, Phila. Co., Dec. T., 1920, No. 3249.

The facts in this case, as they appear from the statement of claim and affidavit of defence, are to be found stated at length in the opinion by Judge Shoemaker in H. O. Wilbur & Sons, Inc., v. Lamborn et al., 30 Dist. R. 444.

*Francis B. Bracken* and *Clement B. Wood*, for plaintiffs.

*Thomas Stokes* and *Louis O. Van Doren* (the latter of the New York Bar), for defendants.

SHOEMAKER, P. J., Oct. 13, 1922.—Members of the jury: The testimony that has been offered here is uncontradicted, and it has been agreed by the parties that it is to be considered as true as testified to. Therefore, there is no reason for going through the empty form of submitting to you facts for your determination upon uncontradicted testimony. The question then becomes one of law for me to decide from the facts as they have been disclosed by the evidence. This is an action brought by H. O. Wilbur & Sons against Lamborn & Co. to recover moneys which were paid for a cargo of sugar landed here in December, 1920, and which had been purchased by H. O. Wilbur & Sons from Lamborn & Co. under letters dated April 23 and May 6, 1920; one of them for 1000 bags of sugar, and the other one for 500 bags of sugar, to be Java white sugar, and shipped from Java by vessels to the port of Philadelphia.

The only conditions in the contract which are material here are those providing that the sugar was to be shipped in August or September of 1920; it was to be brought by a vessel to this port and delivered at a certain price.

Now, in construing a contract, there are certain rules, of course, which are binding upon a judge in reaching a decision, but what we want to get at is

2 D. & C.

the intent. The subject-matter of this contract is the sale of sugar. That is the material thing in it, and that part of the contract which provides for delivery in a certain way, being transported by a vessel, is an incident to that sale and delivery, and unless somebody was harmed by reason of the manner in which delivery was made, that part ought to give way to the common intent of the contract, which is the sale of sugar and its delivery.

Now, there is in the contract a statement that the name of the vessel by which delivery will be made will be declared later. There is no limitation of the time, you will notice, in the contract when that declaration should be made, but the purpose of it would seem to have been, had it not been for another part of the contract, to identify property in the sugar. Wilbur & Sons did not buy a certain amount of sugar in Java which was separated from the bulk, and, therefore, became their property; they bought certain sugar which was to be their property when it was delivered on the wharf at Philadelphia.

Now, in a sale, if a portion of the property is bought and separated from the bulk, it becomes the property of the purchaser, and if there is any damage done to the property by reason of loss at sea, through a fire or anything of that kind, it is the purchaser's loss, because title has passed to him, and he must suffer in case anything occurs to the property. In this contract there was the reservation that the sellers, Lamborn & Co., were not to be responsible in damages for any non-delivery of the sugar to the purchasers in case there was a breach of contract by reason of the inability of Lamborn & Co. to deliver that sugar at the port of Philadelphia. There is a provision, also, that if there was a certain amount damaged, and only a portion of it brought into the port, it was to be distributed among those who were entitled to it in proportion to what amount was good. Therefore, the property in this sugar was not in Wilbur & Sons before it reached Philadelphia, and that is borne out by the fact that this sugar was bought in Java by Lamborn & Co. and bought C. I. F.; that is, they had it insured for their own protection, so that if there were a loss on the ocean and the sugar was destroyed, their insurance was to stand in place of the other proposition, had there been one, that Wilbur & Sons were to stand it, because the property was transferred to them. That being the case, they declared that they were to send this sugar over here on the Chifuku Maru or the Washington Maru. Then, in answer to inquiries from Wilbur & Sons as to which of the two vessels was to be used in the shipment, they notified them that it was to be shipped by the Chifuku Maru, which was to sail upon a certain date.

Now, the Chifuku Maru met with an accident, her machinery became out of order, and she was unable to come on to this port within a reasonable time. Therefore, Lamborn & Co. notified Wilbur & Sons that the sugar would come on the West Cheswald, that it was exactly the same kind of sugar that Wilbur had bought, came from the same place and was shipped within the time of the contract, the only difference being that it was shipped by the West Cheswald instead of the Chifuku Maru.

Now, what harm could there have been to Wilbur & Sons by reason of that substitution? None; but if Wilbur & Sons have a technical defence, they are entitled to make it here and we must consider it. The question is whether it was a breach of contract on the part of Lamborn & Co to. substitute the West Cheswald for the Chifuku Maru in the landing of the sugar? As a result of the substitution of the West Cheswald, the sugar was brought here in December, and if it had stayed on the Chifuku Maru, it would have gotten here in February. The question of the contract arising, the plaintiffs have

the right to take advantage of a breach of that, and we cannot look at the merits of the case. But in consideration of the whole contract, I have heard the testimony, listened to an argument some months ago on the question of judgment for want of a sufficient affidavit of defence, read the opinion of Judge Hand in the United States District Court, in New York [30 Dist. R. 444; Matthew Smith Tea, etc., Co. v. Lamborn, 276 Fed. Repr. 325], and I have come to the conclusion that the defendants did not breach the contract, and that the plaintiffs have no right to recover in this suit. I, therefore, decline the points of the plaintiffs, affirm the points of the defendants, and instruct you to bring in a verdict in favor of the defendants.

[Under the instructions of the court, the jury rendered a verdict for the defendants.]

Oct. 26, 1922, motion for judgment n. o. v. dismissed.